All right, good morning and welcome. We're ready for our second case, which is number 19-11286, Kevin Harris v. James Jayo. We have Mr. Gleason here for Mr. Harris. We have Mr. Jayo here proceeding pro se, and we have Mr. Pannuccio, who was appointed as amicus by the court to provide argument as well. So, Mr. Gleason, we will hear from you first. Good morning. Good morning, and may it please the court. My name is Kevin Gleason, which is spelled G-L-E-A-S-O-N. I'm with Florida Bankruptcy Group, and we represent Kevin Harris, who is the debtor below the defendant in an adversary proceeding and the appellant herein. This court has noted that courts must avoid searching through the record for possible claims because, and I like pigs hunting for truffles, close quote. The standard is established. Estoppel by judgment requires a determination of the issues actually litigated and decided in prior litigation. It has been suggested that this court has incorrectly applied the law since 1981, as supposedly did the Fifth Circuit. It is admitted that there are no cases which eliminate the plaintiff's burden to demonstrate the issues actually litigated and decided in prior litigation, and I refer to the amicus brief at page 25. Mr. Gleason, let me interrupt you for a second, because before you dive into that issue, I want to tell you what my preliminary thoughts are and see what you think about them. This case seems to me relatively simple, because the state court complaint that was filed was relatively specific with regards to the alleged securities or stock fraud that Mr. Harris committed, and then there was a claim for securities or stock fraud pursuant to, or in violation of Florida Statute 517.301, and that was count nine. The judgment is troubled at the district, at the state court, and the troubling can only come through count nine. So if count nine is specific about the alleged stock or security fraud that Mr. Harris committed, why isn't that the end of that issue? I understand you have issues about what the bankruptcy court did at the trial. Those are separate, but in terms of the judgment being enough to establish issue preclusion or collateral estoppel, why isn't that enough to show that Mr. Harris committed a species of stock or securities fraud? Thank you, Your Honor. I do appreciate your thoughts on it. I also believe this is a simple matter. Your Honor used the term fraud, and it is not an element required in Florida Statute 517.301, because that statute section is in the disjunctive, the or, that there are many grounds for one to have a judgment found against one under that statute, and it is not required that the a default judgment case, and in a default judgment case, Florida, like many other jurisdictions, I think, accepts the well-pleaded factual allegations of the complaint, and the complaint here alleged that Mr. Harris had issued worthless stock certificates and had basically taken Mr. Joe's the claim of securities or stock fraud in count nine. Because the Florida Supreme Court has held that an admission by default in a case is not a fact under collateral estoppel, estoppel by judgment. I would refer the court to the case of Blanchard v. Stribling, 224 South 2nd 713. It's a 1946 case from the Florida Supreme Court, and I quote, it was held that a judgment by default only admits for the purposes of the action, the legality of the demand or claim in suit, and does not make allegations in the declaration or complaint evidence in an action on a different claim. So it's the same, let's say, position that Judge Mark, who stands alone at the bankers' court level, Judge Mark took the position, well, it was admitted in the complaint by default, so therefore I'm going to assume that fact in the subsequent case, when the Florida Supreme Court has said you cannot do that, because someone makes an allegation in a prior case does not make it a fact in the subsequent case. And so we're still left with the judges being asked to hunt like pigs for truffles. You have to look through and try to figure out what was actually litigated and what was essential to the judgment, which is not what we're supposed to do. The burden is on the plaintiff to demonstrate what was litigated in the prior case, and that was not done here. So what is it that the default judgment can establish? The default judgment can establish the facts that are found by the prior court. But the court doesn't find anything except that the complaint's factual allegations make out a valid legal claim under Florida law. Why isn't that preclusive? The court didn't find that. The court found nothing. It had to, because it granted a default judgment. And there we are. Whether the state court got it right or wrong, the state court had to find that the complaint, as alleged, stated a claim for securities fraud, or else, if Mr. Harris, let me just, let me give you this hypothetical. If Mr. Jayo had said the sky was dark blue on a given night, therefore, Mr. Harris committed securities fraud, the state court could not have granted default judgment because the allegations would not have substantiated a claim of securities fraud, right? The state court has to satisfy itself that the allegations make out a valid claim. So why didn't the state court do that here? Your Honor, I'm back to what the statute provides. The statute does not require a finding of fraud. And the bankruptcy court is obligated to interpret narrowly exceptions from discharge. So to narrowly interpret does not permit one the license to go back and imagine what was going through the mind of a prior judge who made no findings of fact, who simply entered a default judgment as a punishment. And I go back to 517051 that has in the disjunctive to engage in any transaction practice or course of business, which operates or would operate as a fraud or deceit. There's a distinction between fraud or deceit. Someone can be deceptive without being fraudulent. And so it's not possible to look at the law and the allegations and the final judgment and determine what facts were actually lit, what was actually litigated and what was essential to the final judgment. Mr. Gleason, let me ask you to back up again to what the elements are of collateral estoppel issue preclusion in the state of Florida. We're bound by their law. And I looked carefully at these presentations that were made on this, did the Florida Supreme Court ever hold that the element, one of the elements was a finding that the issue was a critical and necessary part of the prior determination. Have they ever held that council two minutes, please. Thank you, Your Honor. Welcome. Your Honor, that exact language is not in the Supreme Court, but it is just a matter of linguistics because the Supreme Court of Florida adopted wholesale the federal standard from the estoppel by judgment standard for Florida. And the court explained that where the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted upon the determination of which the finding or verdict was rendered. That's the same way as saying it was critical and necessary. The reason I ask the question is the Florida Supreme Court has articulated the test differently. In the case that struck me as the seminal one withholding mobile oil cork, the Chevron 1977, the Supreme Court of Florida tells us that as far as their law is concerned, the essential elements of the doctrine are that the parties and issues be identical and that the particular matter be fully litigated and determined in a contest, which results in a final decision of a court of competent jurisdiction. If you fast forward to 2015 in Marquardt, the state and recited to us, the articulation is different. There they enumerate five elements, one of which the second element says the issue was critical in a necessary part of the prior determination. That wasn't the basis upon which the Florida Supreme Court ruled though in Marquardt. It clearly was dicta. Whereas if I looked at the mobile cork case, there's no question it was holding. And I'm just trying to ask you whether this critical and necessary stuff is really part of the law of collateral estoppel in the state of Florida. And your honor, I believe it is because it is required under collateral estoppel that the matter in the second case have been actually litigated and decided in the prior case. And how could something be actually litigated and decided, which was not essential to the judgment? And I'm sorry, I can't pull up mobile oil that quickly, but it may have been a race judicata case. And unfortunately, we've gotten away from using dead language to discuss, to identify concepts which are unchanging over time. And now the concept is called issue preclusion, which jams together collateral estoppel and race judicata, which are different animals. Thank you. Thank you very much. We've taken you beyond your time, but you have your full time allotted for rebuttal. Thank you. Okay. Who is going first, Mr. J.O. or Mr. Panushu? Mr. J.O. Okay, you're on. Good morning, your honors. My name is James J.O. and I'm the defendant at the lead process in this case. This is an appeal by a Pan Harris, two of the U.S. Florida Southern District Courts, a judgment that upheld the resulting order and final judgments of the bankruptcy trial. Now, both judges, Ray of the bankruptcy court and Demetrius of the district court confirmed that Florida collateral law had been fully met by me without mitigating factors to preclude further litigation in the bankruptcy court. And that the debt of Mr. Harris was owed to me by him. This was a debt that started in 2008, 5,000 years, five years after his accident, and which I started off giving him $100,000, a loan for $100,000 plus checks for $572,000, which were entered as exhibits in the Nassau County Court. I base my case is meeting the criteria of 10 of 11 USC 523A2 and of having met the elements of Florida collateral estoppel. As mentioned earlier, the Florida Supreme Court has repeatedly outlined the essential elements of collateral estoppel and that critical and necessary element is not in support of my position on the issue to be orally argued before this honorable court. In 1977, as mentioned, the essential elements were the parties and issues be identical and the matter be fully litigated and determined in a competent, in a contest which results in a final decision by a court of competent jurisdiction. The essential elements in my self, both were the same and the matter was fully litigated via the final default judgment adjudicated in the fourth court in and for Nassau County. In regarding Perez versus Rodriguez, the law is clear that a default judgment conclusively establishes between the parties so far as subsequent proceedings on a different cause of action are concerned, the truth of all material allegations contained in the complaint in the first action and every fact necessary to uphold the default judgment. Mr. Harris, that a prior noted hearing, neither contested nor challenged my notarized sworn under oath affidavit, providing a monetary breakdown for my motion for final default judgment. And as it was in the federal case of root versus fin letter, allegations that an affidavit in support of motion must be considered as true in absence of counter affidavit. He did not. Two minutes, please. Okay. He did not appeal the final judgment, but rather chose to file bankruptcy as he himself admitted in the court. See trial transcript page 57 lines two through 18. As indicated by Mr. Panuccio in his brief, indeed, the facts of in regard Norvash are very similar to this case in which a Florida default judgment of a multi count complaint alleging fraud and non-fraud counts resulted in the debtor, a precious metals dealer, like the accountant in this case, being collaterally stopped from litigating the issue of fraud. For the foregoing reasons, I, James Shao, defendant at Pele, respectfully request that this honorable court affirm the Florida collateral estoppel requirements were met by me to preclude further litigation in the bankruptcy court and uphold and affirm the U.S. District Southern District of Florida's judgment that the debt of appellant Mr. Harris is not dischargeable pursuant to USC 1111 USC 523 A2 and is owed to me. All right. Thank you very much, Mr. We appreciate it. Mr. Mr Panuccio. First, before you begin, I want to thank you for taking on the role of amicus in this case. We certainly appreciate it. And I know the parties do as well whenever you're ready. Thank you, Your Honor. And may it please the court. Good morning. My role today is to argue in support of the proposition that under Florida issued preclusion law, each and every cause of actions assumed in a default judgment is a critical and necessary part of that judgment. And I would like to make you agree that's a necessary standard to me. That's critical and necessary. I'm sorry, Your Honor. Did you ask? Do I agree that that's a necessary standard? Yeah. As I pointed out in my brief, no, I think it's there are unfortunately two lines of cases that have emerged both under Florida law and under Florida state court law and under 11th Circuit 11th Circuit precedent interpreting Florida law. You have one line of cases that that outlines, quote, the essential elements, as Judge Marcus pointed out, starting with the mobile oil case in 1977, being repeated in BJM in 1995. And then again, in Dade Land Depot in 2006. Then you have another line of case. I'm sorry, Your Honor. And you have a second line of cases that includes critical and necessary. But I think and I tried to point this out both in the brief and in the appendix to the brief. If you trace both lines of cases back, what you'll find is that the cases that include the critical and necessary prong all can be traced back, whether they're from the 11th Circuit or the intermediate appellate courts in Florida. All of them can be traced back if you take their mobile oil or BJM. Most of the cases trace back to a fifth. I think it's a fifth district court of appeal case called Acadia Partners from 2000, which cites BGM and mobile oil for the elements of collateral estoppel, but simply adds the critical and necessary prong. So in short, Judge Ginsburg, no, my view is it is not a part of collateral estoppel law in Florida, although there is a line of cases that says it is. Can something be actually litigated without having been necessary? Can something be litigated without being necessary? Your alternative standard, your lesser standard. I'm wondering how much daylight there is between the two. Well, and there are there's at least one bankruptcy court case that said there's not a lot of daylight between the two at most critical and necessary may be subsumed within that actually litigated prong. I think for default judgments, it really doesn't matter. And that's the latter point in my brief, which is the standard in Florida is every default judgment admits every well-plaid allegation in the complaint. And so therefore, it's both actually litigated and critical and necessary, whichever formulation you default judgments, that's probably correct. Okay, so we have here the claim under Florida 517 for investment fraud. And that could be based on negligence, negligent misrepresentation, correct? The count nine of the complaint? I don't recall the count. It is count nine. Okay. In all fairness, Your Honor, just because of the question I was asked to brief, I'm not an expert on that piece of Florida law. That is the representation Mr. Gleason has made, I believe, as I read the statute, it's a statute that sounds in fraud. And I think the complaint, alleged fraud, there is a different count. There are other counts for negligence. But as I read count nine, and the motion for default judgment, it sounded in fraud. I think the problem here may be this, Mr. Pinocchio. Fraud is a term with different meanings in different statutes. And in the in the Florida statute, it has a rather broad meaning, meaning considerably broader than it has in bankruptcy. Yeah. So that something having been clad or determined to have been a fraud under the Florida statute, doesn't by itself tell us that it was a fraud for purposes of 523 of the Bankruptcy Act. Now, is that a point that you are going to be responding to? Well, I think I'd respond this way. I didn't cover that in the briefing. But I think that that's not so much a critical and necessary question. That's a standard of proof for whether the standards are the same. And in if you look at the bankruptcy cases cited in our brief, for example, the courts, the bankruptcy courts are free to and are supposed to examine the original causes of action and allegations and then the bankruptcy statute and ensure that they match up. So, you know, that's something that it was incumbent upon the bankruptcy court to do in this case. I think if I recall the opinion correctly, it reports to have done that. But that is something that every receiving court when you're dealing with preclusion needs to do is to go back and look through the record and make sure that the issue meets all of the standards of the issue preclusion test, not just the actually litigated or critical and necessary problem. Thank you. Thank you. I understand that your position could be just so that I'm really clear on this. That assuming argument, though, there's some daylight or difference between critical and necessary and the rest of this, we need not even answer that question in order to answer the question of whether a default judgment from a state court multi count complaint as preclusive effect in a discharge procedure. That's correct, Your Honor, that would be my position. I will say this. Candidly, it is difficult to find a Florida, a Florida state court case that addresses specifically the interplay between the critical and necessary prong and default judgments. I think the reason for that is because of the doubt about whether there even is such a problem. However, what law there is in Florida on default judgments and their preclusive effect, I think it makes it quite clear that those judgments get issued preclusive effect on every allegation, every count in the complaint. In support of that, I think you have two very clear district court of appeals cases in Florida, one from 1964, Baum versus Pines Realty cited in my brief. Then you also have the Perez versus Rodriguez case, 1977 out of the third district. They both say the same thing. They say, and this is a quote, a default judgment conclusively establishes between the parties so far as subsequent proceedings on a different cause of action are concerned. This is the part, the truth of all material allegations contained in the complaint in the first action and every fact necessary to uphold the default judgment. So those are two district court of appeals cases from the sixties and seventies, which have never been questioned. They've never been overruled by the Florida Supreme court or any other district court of appeal. And in Florida, district courts of appeals are often the courts of last repose. Their pronouncements are good unless and until they're overruled by the Florida Supreme court. So I think that is fairly clearly the law of issue preclusion for default judgments in Florida. But I take it from all the time and effort you went to parse through this critical and necessary in your brief, you thought at least it was helpful in disposing of the second question to answer the first, but not essential. Do I have that right? You do your honor. I think the reason I thought it was helpful is when you actually trace all these, well, you have two things going on. You can see in my brief, for example, I fight, I cite four Florida bankruptcy court cases in which they go this way and say, you know, there's some a critical and necessary prong and it's dispositive. So I think it would be helpful for this court to just bring some certainty to that and say, at least in the 11th circuit, as we read Florida law going forward, this is the test. This is what you should apply. But I do think under either standard every count of a D every count of a complaint that receives a default judgment does get issued preclusive effect. Have you dealt with Fulton against Gesterding in Florida Supreme court case? Can you say that one more time? Your honor? I'm sorry. Fulton against against Gesterding Supreme court case for the Supreme court. Fulton against Gester? Gesterding. Here's the whole thing. Well, there is it's and it's on the default judgment. While there is some conflict among the authorities, the better rules supported by reason and the weight of authority constrains us to hold that if it appears from the record of a former judgment offered in evidence as an estoppel that several distinct matters may have been litigated upon one or more of which the judgment was rendered, the whole subject matter of the action will be at large and open to a new contention unless the uncertainty be removed by I'm not precisely familiar with that case, your honor. And I apologize. But I suspect if I might be remembering correctly, that may be the rule for judgments generally. And that is the rule around the country often for judgments generally. And even in Florida, I think default judgments get a special rule. And the special rule is announced in Perez and Baum. And the special rule is when it's a default, everything is deemed admitted. And there's good reason. There are equitable reasons for that. It's it's due to fairness to the party who is who is getting the benefit of the default judgment, they would, if the other party weren't litigating, litigate all those issues and possibly get a judgment that gives them issue preclusive effect. If the party refusing to litigate receiving the default judgment refuses to do that, then that's the only option available to the party. And so I think that's why there is a difference in those rules, your honor. This was not a default that was mistaken about. I'm sorry, your honor, you said this, this case was not a default judgment case, correct? I thought it was I was mistaken about that. Okay, thank you, your honor. So I do think that's a significant difference. Mr. Panuccio, given what you were asked to brief, you may not be able to answer this question, but I'm going to ask it of you anyways, and see if you're able to. Mr. Gleason says that on the default side, on the default judgment side, there is a 1942, I think, Florida Supreme Court case called Blanchard, which may cut against the principle of law enunciated in the two DECA cases you just referred to us. And I'm wondering if you're familiar enough with Blanchard to be able to say anything about it or not given the precise nature of the issue you were asked to Your honor, I'm just looking at my notes. I tried to take a note on all of the cases that Mr. Gleason briefed. I'm not seeing it, so I apologize. I'm just not familiar with it offhand. I will say my general sense of most of those cases where you get a contrary rule is my same answer to Judge Ginsburg, which is they often state the general rule, but when you actually dig down and look at the rule for default judgments, it's somewhat different. And there are good for that. And the only other thing I'll say is I mentioned Baum and Perez, which are District Court of Appeal cases, but I do think there are four Florida Supreme Court cases that also help inform this issue here. And I include them in my brief, but they are Hay versus Salisbury in 1926 Florida Supreme Court case in which the court said a default judgment does not, quote, from being conclusive and binding between the parties as to matters litigated. Now that was a claim preclusion case, not an issue preclusion case, but it states a general proposition about default judgments. And then we have three later cases. Two minutes, counsel. Two minutes, please. Thank you. I think I can wrap this up very quickly. Two later cases. If you look at the case of Avon versus Hammond Jones, that's 1955 and then Maschiorelli versus Mako Supply, that's 1969. In both of those cases, the Florida Supreme Court gives default judgments specifically issue preclusive effect and not just for the matter that was obvious on the face of the default judgment, but it applied that second prong of the Perez test where Perez says every fact necessary to uphold the judgment. What the court said there is the affirmative defenses that could have been raised in the first case and are now being raised as claims in the second case were necessarily decided even though they weren't on the face of the default. So we have the Florida Supreme Court twice applying that principle. And then lastly, I would just point the court to the tops case from 2004. Now, tops is a little bit different. It's not actually applying issue preclusion. But what they say is when we when courts appellate courts in the state or courts in the state are denying writ actions that are multi-count or multi-issue, so long as the court says something like on the merits or with prejudice, even if it doesn't spell out every issue, those judgments can be issue preclusive. So I think that's some hint, at least, that the Florida Supreme Court does not think that summary dispositions in certain circumstances can be preclusive of all of the issues subsumed within them. And that is, in fact, the rule for default judgments. All right. Thank you very much, Mr. Pannucci. Again, we appreciate the help and the service. I appreciate the opportunity, Your Honor. Thank you. Okay, Mr. Gleason, you're back on. Thank you, Your Honor. And this being my first zoom or argument, I'm happy to be able to look at mobile oil. And I do not find that mobile oil eliminated elements that were enunciated in prior cases. The quote from mobile oil starts in general terms and then goes on to talk about the test. But if we go back to first principles, that is, what is the source of this law? The source of the law is Cromwell v. County, U.S. Supreme Court, 1876. And I quote, where the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted upon the determination of which the finding or verdict was rendered, period. In all cases, therefore, where it is sought to apply the estoppel of a judgment rendered upon one cause of action to matters arising in a suit upon a different cause of action, the inquiry must always be as to the point or question actually litigated and determined in the original action, not what might have been might have been thus litigated and determined. Only upon such matters, it's a judgment conclusive in another action. That's the that to your honor's point about the allegations in the complaint, Mr. Joe would be bound by his own allegations. And in paragraph 53, which is count nine, the violation of section 517.301, he alleges in the disjunctive and includes obtained money or property by means of untrue statements of material fact or omissions of material fact. End of quote in paragraph 53. But that's wrong. But it's not. Well, it is if you if you if you lie to someone about a material fact, or omit a material fact that is black letter fraud. One always hesitates to disagree with the person wearing the black robe. However, but however, your honor, so we get things wrong all the time. So don't worry about that. Not that is what do you call the what do you call the making of an untrue statement with regards to security or a stunt? It could be an untrue statement that was not made intentionally. It could be omission of a merit material fact that with 2020 hindsight should have been disclosed. But that section does not say anything about intent, reasonable reliance, damages, etc. It says obtained money or property by means of untrue statements of material fact or omissions of material fact. Now, if that's the same as fraud, then why does that same section also prohibit fraud? And in paragraph 53, Mr. Harris alleges fraud, but he also alleges, I'll call it not fraud, and another statutory basis for obtaining trouble damages, which does not require finding a fraud. The the bound and when you take count nine, along with the allegations made at the top of the complaint and the general allegations, the claim is that Mr. Harris provided worthless securities and kept the money that Mr. Jace had given him and use it for his own personal benefit. How is that not fraud? I would say where is it alleged to be fraud? You say how is it not fraud? But if you if you someone if you give someone worthless securities in exchange for money and then use the money for your own personal benefit and not for a corporate benefit, how is that not fraud? What else could possibly be? Again, 2020 hindsight, it could be that the securities became worthless, could be they were worthless when they were tendered. It's not properly alleged. And as this court has also admonished, the courts are not supposed to be de facto counsel rewriting and otherwise deficient pleading in order to sustain an action. And that's what John is asking. We're going to rewrite Mr. complaint in the way that he should have said it in order for him to clearly allege fraud. And we're going to rewrite the judgment and add a finding of fact that in a statute that has alternative basis for finding for finding liability, not including no fraud, that we're going to rewrite all that. And now, and collaterally, a stop in different type of action, the based upon allegations that don't carry from one case to the other. May I continue? Yes, of course. Thank you. Mr. Panuccio's presentation demonstrates the confusion of race judicata and collateral estoppel. The Baum and Perez cases were both race judicata cases, not collateral estoppel cases. And so drawing, drawing the holdings of one and applying it to the other, one cannot do that. The collateral estoppel law of Florida taken from Cuomo versus county in 1876 into the Supreme Court of Florida 1924 has remained unchanged. The fact that in mobile oil, the court may have recited three out of the four, the court never said and we're overruling 100 years or so of Florida jurisprudence and saying, well, we're not going to put in the other part of the test that the this is Judge Marcus, Mr. Gleason. When you look at that statement by the Supreme Court, Florida Supreme Court in mobile oil, they don't say, here's a list and maybe there are others. The exact language is that the essential elements of the doctrine of collateral estoppel, all that the parties and issues be identical and that the particular matter be fully litigated and determined in a contest, which results in a final decision by a court of confidence jurisdiction. So it's not there. Maybe it doesn't matter. And maybe there isn't a whipload of difference anyway, but they do not use quite clearly this language of critical and necessary part of which they do use albeit in dicta some years later. But the language that I just cited to you from mobile oil corporation in 77 is used again by the Florida Supreme Court on any number of occasions in the department of health and rehabilitation versus BGM in 95, et cetera. But as I read their law, at least how they postulate the elements of collateral estoppel, the Florida Supreme Court does not include specifically the language that the issue was a critical and necessary part of the prior determination. At least that's how I see the law. I think it's arguably not altogether clear because at least in dicta, they do include it in the Marquardt case. Acknowledging the cases that preceded mobile, but I don't see that there's any light between these two tests. How could something have been actually decided upon which the determination of which the finding or verdict was rendered, which is the language out of the Supreme Court 1920s for spring for gray versus gray. The gray court said where the second action between the same parties is upon a different claim or demand. The judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted upon the determination of which the finding or verdict was rendered. How can something be a basis for a verdict or finding if it wasn't critical and necessary? And so there's no point. Of course, if Mr. Panuccio was right that under Florida law, the default judgment admits every well pled allegation. As a matter of law, it really doesn't matter whether we fuss with critical and necessary or not. Whether we say it's in the law of Florida, it's not in the law, it's implicit or otherwise. Either way, he says Florida law is sufficiently clear to say that the default judgment admits every well pled allegation. And I would agree for race to Dakota purposes, but as the Florida Supreme Court has said in the Blanchard versus stripling case, a judgment by default only admits for purposes of the action, the legality of the demand or claim in suit and does not make allegations in the declaration or complaint evidence in an action on a different claim. That's collateral estoppel. The Florida Supreme Court says in a collateral estoppel case, the admitted allegations of a complaint do not carry over to the collateral case. Mr. Panuccio does not cite any case to the contrary. That excerpt is from Baum at page 522, 523. Thank you. All right. Thank you all very much. We really do appreciate the help. Thank you.